The **UNITED STATES of America and Robert F. Price of the Drug Enforcement Administration, United States Department of Justice, Petitioners,**

*v.*

The **MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, INC., Respondent.**

**Civ. A. No. C81–0051.**

United States District Court,
D. Wyoming.

March 27, 1981.

---

Jeffrey C. Fisher, Asst. U.S. Atty., Dt. of Wyoming, Cheyenne, Wyo., Elizabeth M. Edson, Atty. for Drug Enforcement Administration, Dept. of Justice, Washington, D.C., for the U.S.

W. Douglas Hickey, Cheyenne, Wyo., for respondent.

## MEMORANDUM OPINION AND ORDER GRANTING PETITION TO ENFORCE COMPLIANCE WITH SUBPOENA OF THE DRUG ENFORCEMENT ADMINISTRATION AND NON–DISCLOSURE OF THE EXISTENCE OF THE SUBPOENA

BRIMMER, District Judge.

The above-entitled matter having come before the Court on March 16, 1981, on this Court's Order directing Respondent to appear and show cause why Respondent should not honor Petitioners' subpoena, the Petitioners being represented by Jeffrey C. Fisher, Assistant United States Attorney, and Elizabeth M. Edson, Attorney for the Drug Enforcement Administration, Department of Justice, and Respondent being represented by W. Douglas Hickey, Esq., the Court having heard argument in support of and in opposition to the Petitioners' Petition to Enforce Subpoena of the Drug Enforcement Administration, and Petitioners' Motion for a Protective Order to prevent disclosure of the existence of the subpoena, and being otherwise fully advised in the premises, does find as follows:

## FINDINGS OF FACT

Petitioner, Robert F. Price, is the Special Agent-in-Charge of the office of the Drug Enforcement Administration, hereinafter, "the D.E.A.", at Cheyenne, Wyoming. Respondent, the Mountain States Telephone and Telegraph Company, is a subsidiary company of the American Telephone and Telegraph Company, incorporated in the State of Colorado and registered to do business within the State and District of Wyoming.

Petitioner and fellow agents of the D.E.A. are presently conducting a criminal investigation into the activities of an individual who is suspected of smuggling large quantities of marijuana and cocaine into the United States. This activity is in violation of 21 U.S.C. §§ 841(a), 955, and 963, and 18 U.S.C. § 2. Respondent is in possession of certain business records, specifically, the toll records for the suspect's telephone number, which can reasonably be expected to assist in ascertaining the scope of the suspect's criminal activity and the identity of the source and/or the ultimate destination of the marijuana and cocaine. These records are vital and necessary to the successful completion of Petitioner's investigation.

On March 10, 1981, Petitioner issued a subpoena under 21 U.S.C. § 876(a) directing Respondent to produce the suspect's toll records for the period of June 1, 1980,

through January 31, 1981. By letter dated March 10, 1981, Petitioner also requested that Respondent not disclose, for a period of ninety (90) days, the existence of Petitioners' request for records. Petitioner stated, and this Court specifically finds, that any such disclosure could seriously impede the investigation being conducted and thereby interfere with the enforcement of the law.

Petitioners' subpoena and letter were personally served upon Respondent on March 10, 1981, and Respondent, by letter to Petitioner dated March 10, 1981, declined to release the requested documents. On March 13, 1981, Petitioners filed a Petition with this Court to judicially enforce said subpoena, under 21 U.S.C. § 876(c). Petitioners contend that said subpoena is both lawful and constitutional and that Respondent should be directed to release the subpoenaed records.

Respondent does not contest Petitioners belief that said subpoena is lawful and constitutional. Respondent's refusal to honor said subpoena is based solely upon questions raised by the Chief Judge for the District of Colorado concerning the legality and constitutionality of Petitioners' issuance of a subpoena under 21 U.S.C. § 876 for use in a criminal investigation.

## CONCLUSIONS OF LAW

I. THE SUBJECT SUBPOENA IS A LEGITIMATE EXERCISE OF THE AUTHORITY PROVIDED TO PETITIONERS BY 21 U.S.C. § 876.

The subject subpoena was issued by Petitioner for Respondent's records of an individual suspected of illegal drug trafficking. The Supreme Court has many times recognized the great concern of the public over the increasing drug problem in this country. See, e. g., *U. S. v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 1881, 64 L.Ed.2d 497 (1980), where Justice Powell states, "The public has a compelling interest in detecting those who would traffic in deadly drugs for per-sonal profit. Few problems affecting the health and welfare of our population, particularly the young, cause greater concern than the escalating use of controlled substances."

To protect the public from this growing level of drug trafficking, Congress enacted the Controlled Substances Act of 1970, Title 21 of the U.S.Code.[1] Both 21 U.S.C. §§ 801 and 801a recognize that the purpose of Title 21 is to deal with the serious detrimental effect of controlled substances on the health and welfare of the American people. *U. S. v. Jeffers*, 524 F.2d 253 (CA-7, 1975); *U. S. v. Chen*, 473 F.Supp. 1042 (S.D.N.Y., 1979). A congressional declaration of purpose, as contained in 21 U.S.C. §§ 801 and 801a, is "in itself a declaration of public interest and policy." *Virginia Railway v. System Federation No. 40*, 300 U.S. 515, 552, 57 S.Ct. 592, 601, 81 L.Ed. 789 (1937).

The Controlled Substances Act was intended as a comprehensive federal program to place certain drugs and other substances under strict federal controls to be administered by the Attorney General. The Act provided the Attorney General with broad administrative duties as well as enforcement duties, both criminal and civil. Drugs and various other defined substances were subject to being classified or declassified for various purposes under the Act; manufacturers and distributors were to be registered (which registrations were subject to revocation and suspension); research was to be conducted; inspections of registrants were to be made; public reports were to be made and many other controls on the legitimate drug industry were placed under the Attorney General's supervision.

In addition, the Controlled Substances Act makes the Attorney General the chief enforcement officer for purposes of both the civil and criminal penalties of the law, including enforcement of certain "prohibited acts" set forth in the Act. The individu-

1. Continuing congressional concern over the severity of drug trafficking is well illustrated by its passage of subsequent amendments to the Controlled Substances Act. See, e. g., The Psychotropic Substances Act of 1978 which dou-bled the penalties for trafficking in PCP, and the Infant Formula Act of 1980, which increased the penalties for trafficking in marijuana.

al whose records are being sought by Petitioner from Respondent is suspected of smuggling large quantities of cocaine and marijuana into the United States. This activity is prohibited by 21 U.S.C. §§ 841(a), 955 and 963.

To assist the Attorney General in enforcing the Controlled Substances Act, Congress granted him the authority to issue investigative, or administrative subpoenas. 21 U.S.C. § 876(a) provides, in part: ·

> In any investigation relating to his functions under this subchapter with respect to controlled substances, the Attorney General may subpoena witnesses, compel the attendance and testimony of witnesses, and require the production of any records (including books, papers, documents, and other tangible things which constitute or contain evidence) which the Attorney General finds relevant or material to the investigation.

As a general rule, it is well settled that "[t]he starting point in every case involving construction of a statute is the language itself." *Teamsters v. Daniel*, 439 U.S. 551, 558, 99 S.Ct. 790, 795, 58 L.Ed.2d 808 (1979); see also *Touche Ross and Company v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979); *Ernst and Ernst v. Hochfelder*, 425 U.S. 185, 197, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976).

Clearly, 21 U.S.C. § 876(a) expressly grants the Attorney General[2] subpoena power "in any investigation" conducted by him pursuant to his powers and duties un-

der the Controlled Substances Act. Those investigations may be in furtherance of D.E.A.'s functions in enforcing both the regulatory and the criminal laws relating to controlled substances. Given the Congressional concern which caused the enactment of the Controlled Substances Act, a broad reading of the term "in any investigation" is consistent with the stated Congressional determination that "the illegal traffic in drugs should be attacked with the full power of the Federal Government." H.Rept.No. 91–1444.

■ A subpoena issued under 21 U.S.C. § 876 is not restricted for use solely in enforcing the regulatory provisions of the Controlled Substances Act.[3] Had Congress intended to so limit the use of 876 subpoenas, it could have done so by limiting said subpoenas to effectuate those functions contained in Parts B and C of the subchapter, where all the regulatory functions are grouped. So too, Congress could have effected such a narrow result by limiting the use of the subpoena power "in any hearing" rather than the more expansive phrase "in any investigation". *Oklahoma Press Publishing Company v. Walling*, 327 U.S. 186, 66 S.Ct. 494 at 500, N. 22, 90 L.Ed. 614. Indeed, 21 U.S.C. § 875 specifically authorizes the Attorney General to issue subpoenas during the conduct of administrative hearings. As such, 21 U.S.C. § 876 would merely be redundant if Congress did not intend its subpoena power to be broader than that conferred in 21 U.S.C. § 875.

---

**2.** While 21 U.S.C. § 876 specifically addresses the Attorney General, 21 U.S.C. § 878(2) provides the Attorney General with the authority to delegate his subpoena authority to other enforcement personnel within the Department of Justice. Under Reorganization Plan No. 2 of 1973, the Drug Enforcement Agency was established by Presidential order and placed within the Department of Justice, specifically for the purpose of enforcing the Controlled Substances Act. The Attorney General delegated his authority to issue subpoenas first to the Administrator and all Regional Directors of the D.E.A., and then to all Special Agents-in-Charge of D.E.A. field offices. 28 C.F.R. 0.104, Appendix to subpart R, Section 7. The subject subpoena was issued by Petitioner Robert F. Price, who is the Special Agent-in-Charge of the Cheyenne

D.E.A. Office. Therefore, the subject subpoena was properly issued by an official of D.E.A. with the authority to do so.

**3.** Although there are no reported cases construing 21 U.S.C. § 876, this issue was specifically addressed in *U. S. v. Hossbach*, Criminal No. 80–148 (E.D.Pa., Order dated July 15, 1980, Denying Defendant's Motion to Suppress, at pp. 7–10) and *U. S. v. Enriquez*, No. CR 78–287 PHX–CAM (D.Ariz., Order dated July 15, 1980, Denying Defendant's Motions to Suppress, at p. 4). Although both opinions remain unpublished, pending appeals on other issues to the Third and Ninth Circuit Courts of Appeal, respectively, the holdings of both cases are precisely the same as that held herein.

That an administrative subpoena may be used for criminal investigations is not a novel proposition, and is supported by the legislative history of 21 U.S.C. § 876. D.E.A.'s predecessor agencies have long been authorized to issue investigative or administrative subpoenas, the vast majority of which were issued for use in criminal investigations.

The roots of 21 U.S.C. § 876 may readily be traced to Pub.L. 84–362 (84th Cong., 1st Sess.) (1955), which authorized the Secretary of the Treasury to issue administrative subpoenas to enforce the nation's narcotic laws. That enactment (69 Stat. 684) was codified as 21 U.S.C. §§ 198a, 198b, and 198c. As in the case of present day Section 876, the subsections of Pub.L. 84–362 respectively dealt with the administrative issuance of subpoenas, service of the subpoenas and the invocation of judicial aid to enforce subpoenas. In all respects, the language of Pub.L. 84–362 and Section 876 are substantially the same. Most importantly, Pub.L. 84–362 authorized the Secretary of Treasury to issue subpoenas "[f]or the purpose of any investigation which * * * is necessary and proper to the enforcement of the laws of the United States relating to narcotic drugs and marijuana." 69 Stat. 684 (1955). Accordingly, on its face, Pub.L. 84–362 conferred subpoena power as broad as that conferred by Section 876.

And, as the accompanying legislative history made clear, Pub.L. 84–362 was meant to serve criminal investigatory purposes as well as regulatory purposes. In enacting Pub.L. 84–362, Congress sought to remove the "handicaps enforcement officers" faced in conducting investigations concerning the narcotics laws. 101 Cong.Rec. 11683 (July 27, 1955) (remarks of Rep. Cooper). As such, both committees considering the proposed legislation concurred in the views that:

It is generally recognized that the power to subpoena witnesses, and to require the production of records is a legitimate and effective aid to the administration of regulatory and penal statutes. The authority to be granted to the Secretary of the Treasury by the bill would be an invaluable weapon in the enforcement of the laws relating to narcotic drugs and marijuana. In view of this, the Treasury recommends favorable consideration of the proposed legislation.

H.Rept.No. 1347 (84th Cong., 1st sess.) (1955) p. 2; S.Rept.No. 1247 (84th Cong., 1st sess.) (1955) p. 1–2.

That Congress was aware of the former 21 U.S.C. § 198 when it authored the Controlled Substances Act of 1970 is apparent from the language of the Act itself. Thus, in Section 1102 of the Act, which dealt with conforming amendments, Congress amended 21 U.S.C. § 198a by making the Secretary of the Treasury's subpoena power applicable to "any investigation which * * * is necessary and proper to the enforcement of Section 545 of Title 18 of the United States Code (relating to smuggling goods into the United States with respect to any controlled substance)." Not only did Congress continue its prior authorization for investigative subpoenas, it expressly stated that the investigations related to the enforcement of a statute which was wholly criminal in nature.

■ Thus, by extending the subpoena of the Secretary of the Treasury to smuggled narcotics, Congress gave Treasury subpoena power to investigate the international aspects of drug trafficking while the power given to the Attorney General under 21 U.S.C. § 876 related to the domestic enforcement of the laws regarding controlled substances. This Court has compared the language and scope of the two grants of subpoena power and concludes that they are so similar that Congress intended each to be "a legitimate and effective aid to the administration of regulatory and penal statutes." See H.Rept.No. 1347 (84th Congress, 1st Sess.) (1955) p. 2; S.Rept.No. 1247 (84th Congress, 1st Sess.) (1955), pp. 1–2.

■ Here, Respondent's failure to honor the subject subpoena is seriously hindering the successful culmination of Petitioner's investigation into the drug trafficking activities of the suspect. If the subject subpoena cannot be issued for use in criminal

investigations, the potential harm to the public is enormous, not only from the continued illegal activities of this suspect, but from those of others whose records are vital and necessary to other D.E.A. investigations. Given the broad language of the statute itself, and the legislative history set forth above, this Court will not so narrowly construe the phrase, "in any investigation", to preclude the issuance of 876 subpoenas for use in criminal investigations. Accordingly, the subject subpoena, issued by Petitioner, Robert F. Price, for use in a criminal investigation relating to his function of enforcing the Controlled Substances Act, is a legitimate exercise of authority provided to him by 21 U.S.C. § 876(a).

## II. THE SUBJECT SUBPOENA IS CONSTITUTIONAL AND DOES NOT VIOLATE ANY FOURTH OR SIXTH AMENDMENT RIGHTS OF THE SUSPECT WHOSE RECORDS ARE BEING SOUGHT FROM RESPONDENT.

### A. FOURTH AMENDMENT

The suspect, whose records are being sought from Respondent, has no standing to raise any Fourth Amendment claims. It is well established that the application of the Fourth Amendment in any case depends upon whether the Defendant can claim a "reasonable expectation of privacy" that was invaded by governmental action. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). A court may not exclude evidence under the Fourth Amendment unless it finds first, that the constitutional rights of the *Defendant* were violated and second, that the government conduct was an unlawful search or seizure. *Brown v. United States*, 411 U.S. 223, 229–230, 93 S.Ct. 1565, 1569, 36 L.Ed.2d 208 (1973); *Alderman v. United States*, 394 U.S. 165, 171–172, 89 S.Ct. 961, 965, 22 L.Ed.2d 176 (1969); *Simmons v. United States*, 390 U.S. 377, 389, 88 S.Ct. 967, 973, 19 L.Ed.2d 1247 (1968).

Fourth Amendment rights are invaded only when the privacy interest of the claimant rather than those of a third party, have been invaded. *United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980); *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1979). Indeed, the Supreme Court held, just last term, that a Defendant does not have threshold standing to raise Fourth Amendment claims even when evidence is illegally seized from a third party by an unlawful search. *United States v. Payner, supra*, 100 S.Ct. at 2446.

Here, the evidence sought by the subject subpoena is the property of the Respondent. The suspect's toll records are not under the control or the command of the suspect; they are not maintained by the suspect; in a real sense, they were not even created by the suspect. They are outside the legitimate area where the suspect can possibly expect to retain privacy.

The holding of *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976) is instructive and was cited favorably in *Smith v. Maryland, infra*, 442 U.S. at 740, 99 S.Ct. at 2580. The Defendant in *Miller* asked the Supreme Court to find a Fourth Amendment interest in records of transactions he had with banks, on the ground that the records were copies of personal records made available to the banks for a limited purpose. The Court rejected his claim, stating that "the depositor takes the risk in revealing his affairs to another, that the information will be conveyed by that person to the Government", *Supra*, 425 U.S. at 443, 96 S.Ct. at 1624, citing *United States v. White*, 401 U.S. 745, 751–752, 91 S.Ct. 1122, 1125, 28 L.Ed.2d 453 (1971). The *Miller* Court noted that the Supreme Court has repeatedly ruled that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by the third party to government authorities, *Supra*, 425 U.S. at 443, 96 S.Ct. at 1624, see *Hoffa v. United States*, 385 U.S. 293, 302, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966), *Lopez v. United States*, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963).

Here, the records being sought fall squarely within the rules of *Payner* and *Miller*. Therefore, the suspect, whose rec-

ords are being sought from Respondent, has no standing to raise a Fourth Amendment claim.

■ This Court further holds that the subject subpoena does not constitute an unlawful search or seizure under the Fourth Amendment. A Defendant can have no "reasonable expectation of privacy" in the numbers which are dialed from his telephone.

Directly on point is *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), in which the Supreme Court ruled that the installation and use of a pen register on a Defendant's telephone by police officers was not a search at all, since the Defendant's expectation of privacy regarding his telephone records was not reasonable. The language of *Smith v. Maryland* is worth quoting at length:

> First, we doubt that people in general entertain any actual expectation of privacy in the numbers they dial. All telephone users realize that they must 'convey' phone numbers to the telephone company, since it is through telephone company switching equipment that their calls are completed . . . Telephone users, in sum, typically know that they must convey numerical information to the phone company; that the phone company has facilities for recording this information; and that the phone company does, in fact, record this information for a variety of legitimate business purposes . . . When he used his phone, the petitioner voluntarily conveyed numerical information to the telephone company and 'exposed' that information to its equivalent in the ordinary course of business. In so doing, petitioner assumed the risk that the company would reveal to police the numbers he dialed. *Smith v. Maryland*, 442 U.S. at 742, 99 S.Ct. at 2581.

The Ninth Circuit Court of Appeals has specifically addressed this issue in two cases and both times rejected the Defendants' arguments that release of telephone toll records constitutes a Fourth Amendment search. See *U. S. v. Baxter et al.*, 492 F.2d 150, 167 (9th Cir. 1973); *cert. denied* 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974); and *U. S. v. Fithian*, 452 F.2d 505, 506 (9th Cir. 1971), where the Court specifically held that any privacy interests to be protected by the Fourth Amendment attach to the suspects' telephone conversations, not to the suspects' toll records.

Here, the subject subpoena seeks information from Respondent concerning the suspect's telephone toll records. It does not seek any information concerning the content of the suspect's telephone conversations. Hence, no unlawful search or seizure will occur upon release by Respondent of the subpoenaed records.

## B. SIXTH AMENDMENT

■ It is conceivable that the subpoenaed telephone toll records may include a number or numbers which Petitioner may later determine to be listed to a law firm. This Court cannot find any possible violation of the suspect's Sixth Amendment right to counsel, or any infringement upon the attorney-client privilege, which would occur upon release of any such numbers to Petitioner.

■ It is well settled that the right to counsel attaches only upon commencement of a "critical stage of judicial criminal proceedings." *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) and cases cited therein at 688, 92 S.Ct. at 1881. Here, Petitioners' criminal investigation of the suspect has not yet been completed nor has any indictment been sought or returned by the Grand Jury. Hence, we have not yet reached a "critical stage of judicial criminal proceedings" which would entitle the suspect to a right to counsel under the Sixth Amendment.

Even if the suspect's Sixth Amendment right to counsel had attached at this point, disclosure of the subpoenaed toll records does not infringe in any way upon that right or the attorney-client privilege.

■ The attorney-client privilege attaches only to protect "confidential communications" from the client to an attorney. A retainer—or the identity of a client—is

not a "confidential communication," and therefore not privileged information. See *U. S. v. Jeffers*, 532 F.2d 1101 (CA–7, 1976), where an attorney was compelled to testify in a Continuing Criminal Enterprise case as to the amount of the attorney's fees paid by the Defendant in one year. See also *Colton v. U. S.*, 306 F.2d 633 (CA–2, 1962).

Here, the toll records sought by Petitioner reveal only the numbers which were dialed from the suspect's telephone number during the requested period of time. The records do not reveal the content of the suspect's telephone conversations, only the fact that a number was dialed. Even where that number may be listed to an attorney, no attorney-client privilege can attach.

III. THE SUSPECT WHOSE TOLL REC-
ORDS HAVE BEEN SUBPOENAED
FROM RESPONDENT IS NOT EN-
TITLED TO DISCLOSURE OF THE
EXISTENCE OF THE SUBPOENA.

██ Respondent is a subsidiary company of American Telephone and Telegraph Company. As a matter of corporate policy, the Bell System companies have voluntarily agreed not to notify their customers when toll records are subpoenaed, as long as the requesting law enforcement agency certifies that any such disclosure would impede the criminal investigation. This policy is contained in testimony by H. W. Caming of A.T. & T. before a Congressional Committee and set forth in the Congressional Record-Senate, May 3, 1979, pp. 5333–5334. This voluntary non-disclosure policy is followed for an initial period of ninety (90) days and may be extended upon proper request.

Having determined that the suspect here has no ownership or privacy interests in the subpoenaed documents, and having found that disclosure of the subpoena would jeopardize Petitioner's investigation, this Court concludes that the suspect is not entitled to disclosure of the existence of the subject subpoena.

Having made the above FINDINGS OF FACT and CONCLUSIONS OF LAW, and

having also determined that the records sought by Petitioner are "material and relevant" to Petitioners' investigation, as required under the recent Tenth Circuit decision regarding the enforcement of an I.R.S. subpoena, *U. S. v. City National Bank and Trust Company*, 642 F.2d 388 (1981), IT IS HEREBY

ORDERED, that Respondent shall produce the subpoenaed records and return same to Petitioner at a date and time to be arranged by the parties. IT IS

FURTHER ORDERED, that Respondent shall not disclose the existence of the request for the subpoenaed records for a period of ninety (90) days from the date of the issuance of the subpoena and, in addition, that Petitioner may request extensions of the non-disclosure period as necessary to further the aims and objects of the investigation. IT IS

FURTHER ORDERED, that Respondent shall comply in like manner with all additional administrative subpoenas which shall be issued by Petitioner for additional investigations.