UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert W. HARRINGTON and Paul
McLeod, Defendants-Appellants.

No. 84–3177.

United States Court of Appeals,
Eleventh Circuit.

May 30, 1985.

Clifford L. Davis, Tallahassee, Fla., for defendants-appellants.

Michael T. Simpson, Asst. U.S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, HATCHETT, Circuit Judge, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

On this appeal from a conviction and sentence of the appellants of drug-related offenses, they outline the following "Issues on Appeal:"

    I. Whether the trial court erred in denying appellant's motion to suppress evidence obtained from an illegal search of his home in violation of the fourth amendment to the United States Constitution.

    II. Whether the trial court erred in denying appellant's motion to suppress evidence obtained improperly by administrative subpoenas.

    III. Whether the trial court erred in denying appellant's motion to dismiss the indictment because of several blatant acts of governmental misconduct.

    IV. Whether the trial court erred in denying appellant's motion for judgment of acquittal.

    V. Whether the fact that agents for the government had given permission to government witness McCraw to engage in illegal activities during his role as an informant and such was not disclosed to appellants prior to or during trial constitutes a violation of the required *Brady* disclosure.

    VI. Whether the forty year sentence given to appellant on Count I constitutes "cruel and unusual punishment" in violation of the eighth amendment to the United States Constitution.

    VII. Whether the court improperly imposed sentences and fines on both Harrington's Section 848 conviction and the predicate offenses.

After carefully considering the briefs, record and oral argument, we conclude that only issues I, II, VI and VII warrant discussion.

Appellants Robert Harrington and Paul McLeod were indicted with co-defendants Mark Harrington and James Harbour. The jury found Robert Harrington guilty of one count of engaging in a continuing criminal enterprise ("CCE"), one count of conspiracy to import marijuana, one count of importation of marijuana, one count of conspiracy to possess with intent to distribute marijuana, and one count of possession with intent to distribute marijuana. McLeod was found guilty of conspiracy to import marijuana and conspiracy to possess with intent to distribute marijuana. Defendants Mark Harrington and Harbour were found not guilty on all counts. The incidents giving rise to the convictions involved a scheme to import marijuana into the United States from Jamaica and Mexico from 1974 through the date of the indictment, August 13, 1983. It involved importation or attempts to import some 18,000 pounds of marijuana.

A. *Legality of Search*

Appellant Harrington's home was searched pursuant to a warrant authorizing a search for Harrington's passport and travel documents. During the search, the agent discovered other items apparently of evidentiary value. He telephoned the magistrate who authorized seizure of these items. The magistrate failed to make a transcript of this telephone call.

Harrington contends the items seized during this search should have been suppressed for three reasons. First, he argues that intentional misstatements in the affidavit in reckless disregard of the truth void the warrant. *United States v. Strauss*, 678 F.2d 886, 893 (11th Cir.1982). Typical of the misstatements identified by Harrington are that the affidavit said he lived in the home part time when agents knew the home had been unoccupied for three to four months and that the affidavit said his co-defendants were free on bond when one was still incarcerated, one was in the midst of a bail reduction hearing, and one was free on bond but restricted to New Hampshire. Appellant's brief contains no record references to support these claimed facts.

Second, Harrington contends the search for the passport was a ruse to enable the agent to conduct a general search. He notes that the affidavit originally sought a warrant for "those items and other evidence which may be used to establish violations of the narcotics laws," but that the magistrate narrowed the warrant to the passport and travel documents. He points out that the agent looked in the refrigerator and toilets, unlikely storage spots for a passport. He also notes that he was informed of the search at the prison outside the presence of his counsel.

Finally, Harrington contends the telephonic warrant involved a fundamental violation of Fed.R.Crim.P. 41, rendering the search unconstitutional under the Fourth Amendment. *United States v. Vasser*, 648 F.2d 507, 510 (9th Cir.1980), *cert. denied*, 450 U.S. 928, 101 S.Ct. 1385, 67 L.Ed.2d 360 (1981). He points out that Rule 41(c)(2)(D) requires that the magistrate make a transcript of any telephone call authorizing a warrant. No transcript was made here. He contends that this constitutes a fundamental violation because there is no way for this Court to review whether probable cause existed. He argues that if the telephone warrant extended the search as broadly as requested in the affidavit, it would be unconstitutionally overbroad. He contends that there was no identification here of whether particular items were seized under the original warrant, the telephone warrant, or the plain view exception to the warrant requirement.

The government responds first that the original warrant was valid. It points out that there was probable cause to believe the passport would have evidentiary value in an international smuggling case, that Harrington had said the passport was in his home, and that destruction of the passport was possible because two of Harrington's co-defendants were on bond. It notes that the district court found no misstatements in the affidavit and that the court's factual findings in denying suppression are to be reversed only if clearly erroneous. *United States v. Duckett*, 583 F.2d 1309, 1313 (5th Cir.1978). It argues second, that the items were legitimately seized under the plain view exception to the warrant requirement. It contends that the search was limited to areas which might contain the passport, such as desks, closets, and counters, and that the agent immediately recognized the evidentiary value of the items seized. *United States v. Blum*, 753 F.2d 999, 1000, 1001–02 (11th Cir.1985). Finally, the government concedes that the telephone call did not produce a valid telephonic search warrant but contends that the call does show the agent's good faith. Hence, under the good faith exception to the exclusionary rule, *United States v. Leon*, —— U.S. ——, ——, 104 S.Ct. 3405, 3419, 82 L.Ed.2d 677 (1984), the evidence should not be suppressed even if it was not found to be within the plain view exception.

The record discloses that the seized items which were introduced in evidence were found either in plain view in the usual sense of the terms, *i.e.*, on top of a table or counter or were in plain view within drawers or closets in which the agent was entitled to look for the passport and other described documents.

■ We therefore affirm the trial court's determination that the original warrant was not defective and that the articles seized were in "plain view." It is thus

unnecessary for us to consider the other arguments.

### B. *Administrative Subpoenas*

Three subpoenas were issued by the Drug Enforcement Administration (D.E.A.), under 21 U.S.C. § 876 between the indictment and the trial in this case. Section 876 provides subpoena power to the attorney general in "any investigation" under the Controlled Substances Act. This authority has been legally delegated to the D.E.A.

Appellants contend that the evidence obtained by these administrative subpoenas should have been suppressed. They rely on cases indicating that it is an abuse of process *to utilize a grand jury* to gather evidence for trial after an indictment has been returned. *United States v. Doss*, 563 F.2d 265 (6th Cir.1977); *Beverly v. United States*, 468 F.2d 732 (5th Cir.1972). They contend that the administrative subpoenas were an attempt to obtain pretrial discovery through a method other than that provided in the Federal Rules of Criminal Procedure.

The government responds that there is no limit on the type of controlled substance investigation in which § 876 subpoenas may be used. *United States v. Mountain States Telephone & Telegraph Co., Inc.*, 516 F.Supp. 225, 229 (D.Wyo.1981); *United States v. Hossback*, 518 F.Supp. 759, 765–67 (E.D.Pa.1980). The government argues that it is not required to cease its investigation after the indictment is issued, but concedes that it must cease use of the grand jury.

■ Appellants' reliance on *Doss* and *Beverly* is misplaced. Those cases deal with the power of the government to cause a grand jury to issue a subpoena to the targeted individual, either after his having been indicted or while the grand jury is considering his indictment. The subpoenas here were not running to the indicted individuals. They were issued to third parties during a continuing investigation. As such, they were entirely legal. *See United States v. Mountain States Telephone &*

*Telegraph Co., supra,* and *United States v. Hossback, supra.* We agree with the decisions in those two cases that the D.E.A. may issue subpoenas under Section 876 in an ongoing investigation so long as they are not to run against the targeted individual. The trial court committed no error in overruling the motion to suppress in this case.

### C. *Constitutionality of Harrington's Sentence of 40 Years Plus $100,000 Fine on the CCE Count*

■ The penalties for engaging in a continuing criminal enterprise are set out in 21 U.S.C. § 848(a). Section 848(a)(1), under which appellants were sentenced, provides:

> Any person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 10 years and which may be up to life imprisonment, to a fine of not more than $100,000, and to the forfeiture prescribed in paragraph (2).

Although convicted of other offenses, Harrington received sentences for imprisonment that were concurrent with the 40 year sentence which was imposed on the continuing criminal enterprise count. He was also fined $100,000 on that count and a total of $170,000 in fines altogether.

Complaining principally of the relatively small amounts of marijuana imported on each of the multifarious transactions conducted by Harrington, he complains that a sentence of 40 years, at his age of 39 is disproportionate to other sentences in like cases. Appellant contends that the punishment meted to him is unconstitutional under the Eighth Amendment to the Constitution forbidding cruel and unusual punishment.

As stated by this Court in *United States v. Darby*, 744 F.2d 1508 (11th Cir.1984):

> The scope of our review is greatly restricted. As the Supreme Court made clear in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), it is not normally the role of an appellate court to second guess the trial judge's determina-

tion of an appropriate sentence. Rather, an appellate court must determine whether the sentence imposed is so grossly disproportionate to the crime as to constitute cruel and unusual punishment. 103 S.Ct. at 3009 n. 16. As the Court pointed out in *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), "Outside the context of capital punishment successful challenges to the proportionality of particular sentences have been exceedingly rare." *Id.* at 272, 100 S.Ct. at 1138. *See also United States v. Phillips*, 664 F.2d 971, 1043 (5th Cir. Unit B 1981), (affirming sentences of 64, 53 and 33 years under Section 848 and other provisions with observation that "proportionality principle might be applicable to an 'extreme example' "), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354, 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed. 166 (1982); *United States v. Valenzuela*, 646 F.2d 352, 354 (9th Cir.1980),(affirming life sentence under Section 848 with similar observation).

*United States v. Darby*, 744 F.2d 1508, 1526 (11th Cir.1984).

The *Darby* court also made the following comment:

Furthermore, we are mindful of the Supreme Court's admonition in *Solem*; "[R]eviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishment for crimes, as well as to the discretion the trial courts possess in sentencing convicted criminals." 103 S.Ct. at 3009. In a footnote, the Court added: "In view of the substantial deference that must be accorded legislatures and sentencing courts, *a reviewing court will rarely be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate.*" *Id.* at 3009 n. 16. (Emphasis added).

Thus, it is in the context of *Darby* that we analyze the contention of appellant here. At first blush it appears that the life

of this defendant is the classic illustration of a person engaged in a continuous criminal enterprise. The government points to the fact that he has been actively engaged in criminal conduct for a period in excess of 20 years during nearly every one of which years he is shown to have violated some provisions of the narcotics laws; that, while some of the shipments were small in quantities, some of them exceeded 2,000 pounds, or a ton, and in total exceeded 18 or 19,000 pounds and had the value of approximately $5,000,000.

The care with which the trial judge outlined the basis for his sentence fully satisfies us that appellants' argument falls short of the mark.

The trial court stated at the sentencing hearing the following:

The first goal is the punishment. In your instance you have been embarked on a career of drug smuggling since 1971 by your own admission. We know of occasions, frequent occasions, every year almost, since that time. As Mr. Simpson says, you have had every opportunity, literally hundreds of opportunities, to disassociate yourself with that activity. You have had good opportunities in the business community. You're a man of great ability. There's no doubt in my mind about that. But instead you have chosen to continue that activity, knowing full well that it is not only illegal, it's immoral, it's contrary to everything that you have been taught, I'm sure. It constitutes a spreading of a poison in our society. It is not a sanitary product but instead generates other evil, other crime. It leads people to do things that brings them before me and before every other judge in this country. It contaminates the youth of our country, and you have been a major participant in that, and punishment certainly is in order. The third goal of any kind of incarceration is specific deterrence, and in your case it's my conviction that if I were to release you or if the jury had released you that you would go back right to your same activities within a matter of months.

You may disagree with that in your mind, but based upon your history and based upon what I think is your propensity to live at the very edge of danger in many respects, I think you would be inclined to do so and you would inwardly and perhaps outwardly gloat about your ability to do so. And that's my personal opinion based upon again the snapshots that have been revealed to me and I don't say that purely derogatorily because I think in many respects the reason why you have done what you have done is not purely for the greed, not purely for the money, but also for the excitement or the life that is associated with it, for the fact that you are running right on the edge of the law and getting away with it, that you have been able to do things that other people have not been able to do, that you have been able to smuggle marijuana not secretly in some hidden field in the middle of the woods somewhere but openly in municipal airports, international airports, in our own airplane, plainly marked, and you can walk right through the Customs agents, you can walk right through the DEA agents or FBI agents, and you've been able to manage in your history so far to talk your way out of those situations. So I think specific deterrence is an important goal.

Probably the most important one is general deterrence, and I want a signal to go out from this courtroom at every opportunity that I don't intend to tolerate it. I want to do everything in my power to make sure that anybody else who is contemplating the same sorts of activity that you're contemplating, or anybody else who is presumably involved in that type of activity, recognizes full well that the Congress of the United States has provided penalties that are severe penalties, and severe penalties in this case can, as Ms. Poston points out, mean up to a life sentence without parole, which is the most severe penalty under the criminal laws of the United States.

So for all these reasons, certainly as painful as it is to me, it is my solemn duty to consider all of the facts and to impose the punishment that I think is appropriate. Therefore it is adjudged on count one that the defendant is hereby committed to the custody of the Attorney General of the United States, or his authorized representative, for imprisonment for a term of forty years, and to pay a fine to the United States in the sum of one hundred thousand dollars. And defendant is ordered to stand committed until the fine is paid or he's otherwise discharged by due course of law.

It is apparent that the trial court gave every consideration to the standards supplied for our guidance in the *Darby* case, in which a sentence of 60 years was meted out to two brothers of more advanced age but who had imported very substantially larger quantities of marijuana than did Harrington.

D. *The Imposition of Sentences and Fines on Both Harrington's Section 848 Conviction and the Predicate Offenses*

■ It is clear that conspiracy offenses merge with the Section 848 offense, so that both the conviction and sentence on count I (conspiring to import) and count IV (conspiracy to possess with intent to distribute) must be vacated. *United States v. Brantley*, 733 F.2d 1429, 1436 (11th Cir.1984); *United States v. Michel*, 588 F.2d 986, 1001 (5th Cir.1979).

■ Appellants' argument that the substantive offenses as well may not be imposed to support the continuing criminal enterprise indictment is incorrect. These substantive offenses are distinct for double jeopardy purposes. *United States v. Darby*, 744 F.2d at 1530; *Brantley* at 1436.

The judgments of the trial court are affirmed with respect to the convictions and sentences on counts I, III, and VI. The conviction and sentences of Mc Leod on counts II and IV are also affirmed. Harrington's conviction on counts II and IV and the sentences as imposed thereon are vacated.

■ Appellants' motion to enlarge the record to include material introduced at a

subsequent state trial of the principal government witness in this case is denied, since it seeks to incorporate matter not heard by the trial court. Such matter is a tape recording of a conversation between the witness McCraw and a state agent which Harrington claims would demonstrate that McCraw perjured himself at Harrington's trial as to the benefits McCraw received for testifying. If there is merit in appellants' contention, he may seek to have the matter appropriately considered by the trial court by the filing of a motion for new trial on the ground of newly-discovered evidence or by filing a motion under 28 U.S.C. § 2255.

The judgments are AFFIRMED in part and VACATED in part.