Larry R. DUNCAN, Plaintiff,

v.

GOEDEKE AND CLEASEY,
et al., Defendants.

Civ. A. No. H–93–1949.

United States District Court,
S.D. Texas,
Houston Division.

Nov. 22, 1993.

Larry R. Duncan, pro se.

Larry C. Marcy, U.S. Attys. Office, Houston, TX, for defendants.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court is the motion to dismiss filed by defendants Jon Goedeke ("Goedeke"), Kevin Cleary ("Cleary"), Martin Schramm ("Schramm"), Leon Guinn ("Guinn"), the United States Customs Ser-

**848**

vice ("Customs Service"), the United States Department of Treasury ("Department of Treasury"), and the United States of America ("United States") (Docket Entry # 8). Defendants seek dismissal of plaintiff Larry R. Duncan's ("Duncan") original complaint. Alternatively, defendants seek summary judgment on plaintiff's claims.

After review of the pending motion, the submissions of the parties, the pleadings, the oral arguments of the parties, and the applicable law, the court finds that the complaint against defendants the United States, the Customs Service, and the Department of Treasury should be dismissed and that summary judgment should be entered for defendants Goedeke, Cleary, Schramm, and Guinn.

## I. Background.

In his complaint, Duncan contends that defendants wrongfully seized and detained his passport in violation of 42 U.S.C. § 1983 and the Fifth Amendment to the United States Constitution. Duncan asserts that due to the detention of the passport, he lost his job because he was unable to travel abroad. He further alleges that he has been unable to find other employment or to obtain legal representation as a result of his diminished financial resources. He seeks damages for economic harm, emotional stress, and physical trauma, as well as punitive damages, arising from the seizure and subsequent detention of his passport.

Plaintiff's claims stem from a search of his residence on August 10, 1992, when agents of the Customs Service, pursuant to a search warrant issued by a United States Magistrate Judge for the Southern District of Texas, searched his Houston apartment and seized his passport, along with other items specified in the warrant. Duncan was unsuccessful in obtaining the release of his passport by a telephone call to the Customs Service. Consequently, Duncan's attorney wrote to the District Director of the Customs Service and to two Assistant United States Attorneys on November 13, 1992, requesting the return of all items seized in the search, including the passport. When he did not get a satisfactory response, in January 1993, Duncan sought the assistance of United States Senator Phil Gramm. He also picketed the United States Courthouse in Houston. On January 28, 1993, the Customs Service advised Senator Gramm that it would return the passport if Duncan would stipulate that a copy to be retained by the Customs Service was a true and correct copy of the original. Upon Duncan's agreement to the proposed stipulation, the passport was returned to him on February 6, 1993, approximately six months after it was seized.

## II. Analysis.

### A. Claims Against the United States.

■ The doctrine of sovereign immunity is a jurisdictional bar to suits against the United States, unless the United States waives immunity and consents to suit. *United States v. Sherwood*, 312 U.S. 584, 586–87, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941); *United States v. Shaw*, 309 U.S. 495, 500–01, 60 S.Ct. 659, 661, 84 L.Ed. 888 (1940); *Bank One v. Taylor*, 970 F.2d 16, 33 (5th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2331, 124 L.Ed.2d 243 (1993). A waiver of sovereign immunity cannot be implied but must be unequivocally expressed. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). Thus, the United States is immune from liability except as specifically and expressly provided by statute. The Federal Tort Claims Act ("FTCA") is the exclusive means provided by statute for recovery of money damages against the United States in tort, and any recovery is limited to compensatory damages. 28 U.S.C. § 2674. The FTCA imposes liability on the United States for personal injuries, death, or injuries to or loss of property caused by the negligence or wrongful act or omission of any employee of the government while acting within the scope of his office or employment. 28 U.S.C. §§ 1346(b), 2671–2680; *United States v. Kubrick*, 444 U.S. 111, 113, 100 S.Ct. 352, 355, 62 L.Ed.2d 259 (1979); *Garcia v. United States*, 538 F.Supp. 814, 816 (S.D.Tex.1982).

■ The court finds that it is without jurisdiction to entertain a claim under the FTCA because plaintiff has not exhausted his administrative remedies. Duncan has not

satisfied the jurisdictional prerequisites for maintaining an action under the FTCA by presenting an administrative claim to the appropriate agency for determination and having the claim finally denied or waiting six months after presentation before filing suit. 28 U.S.C. § 2675(a); *McNeil v. United States*, — U.S. —, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993); *Reynolds v. United States*, 748 F.2d 291, 292 (5th Cir.1984); *Ware v. United States*, 626 F.2d 1278, 1283 (5th Cir.1980).

Therefore, the motion to dismiss filed by defendant the United States is GRANTED.

## B. Claims Against the Customs Service and Department of Treasury.

 It is well established that the United States and its agencies may not be sued *eo nomine* without a specific waiver of sovereign immunity. *Blackmar v. Guerre*, 342 U.S. 512, 515, 72 S.Ct. 410, 412, 96 L.Ed. 534 (1952); *Shelton v. United States Customs Service*, 565 F.2d 1140, 1142 (9th Cir.1977); *Castleberry v. Alcohol, Tobacco, & Firearms Div. of Treasury Dept.*, 530 F.2d 672, 673 n. 3 (5th Cir.1976). There has been no waiver of immunity in this instance. Accordingly, Duncan may not maintain a cause of action for monetary damages against the Customs Service or Department of Treasury based on violations of the United States Constitution, as such actions are barred by sovereign immunity. *Garcia*, 538 F.Supp. at 815–16.

Thus, the motions to dismiss filed by defendants the Customs Service and the Department of Treasury are GRANTED.

## C. Claims Against Goedeke, Cleary, Schramm, and Guinn.

 Plaintiff alleges that defendants Goedeke, Cleary, Schramm, and Guinn, who are special agents of the Customs Service, violated 42 U.S.C. § 1983 by illegally seizing and retaining his passport. No cause of action under § 1983 is cognizable, however, against the United States or federal officers. *Davis v. United States*, 439 F.2d 1118, 1119 (8th Cir.1971); *Monarch Ins. Co. v. District of Columbia*, 353 F.Supp. 1249, 1252 (D.D.C. 1973), *aff'd*, 497 F.2d 684 (D.C.Cir.), *cert. denied*, 419 U.S. 1021, 95 S.Ct. 497, 42

L.Ed.2d 295 (1974). Section 1983 protects persons who were deprived of rights, privileges, and immunities under color of state or local law, not federal law. Therefore, federal officers acting under color of federal law, such as defendants Goedeke, Cleary, Schramm, and Guinn, are not subject to suit under 42 U.S.C. § 1983. *Zernial v. United States*, 714 F.2d 431, 435 (5th Cir.1983); *Broadway v. Block*, 694 F.2d 979, 981 (5th Cir.1982).

 Although relief under § 1983 is not available, federal officials may be sued in their individual capacity for damages resulting from their commission of constitutional torts. *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 397, 91 S.Ct. 1999, 2005, 29 L.Ed.2d 619 (1971). A tort is not of constitutional dimension, however, merely because it is committed by a government employee. *Paul v. Davis*, 424 U.S. 693, 700, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). Similarly, conduct is not unconstitutional merely because it causes a person harm. *Martinez v. California*, 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980).

 To defeat summary judgment, plaintiff has the burden of showing that the conduct of defendants Goedeke, Cleary, Schramm, and Guinn rises to the level of a constitutional tort and, if so, of overcoming the qualified immunity which the defendants, as federal officers acting within the scope of their authority, are entitled to assert. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Here, plaintiff has not presented competent summary judgment evidence or even alleged specific facts, which if true, would show that the defendants violated a clearly established constitutional right. *Id.; see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The uncontroverted evidence shows that agents Goedeke and Cleary seized Duncan's passport pursuant to a search warrant, specifically listing passports as an item to be seized. The warrant was issued by a United States Magistrate Judge who had found probable cause to believe that the passports constituted evidence of a violation of 50

U.S.C. §§ 1701–1706. Affidavits submitted by defendants in support of their motion establish that at the time of the seizure of Duncan's passport, the Customs Service was investigating him for violations of the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.*, and the Libya Sanctions Regulations, 31 C.F.R. § 550. The affidavits further show that the Customs Service was investigating Duncan specifically in connection with the exportation and attempted exportation of oil refining equipment from the United States to Libya without a license from the Office of Foreign Assets Control, Department of Treasury. The sworn application for the search warrant contains a detailed description by special agent Charles Verven of documents found in Duncan's possession upon his entry to the United States at Brownsville, Texas. These documents establish probable cause to believe that Duncan had traveled to Libya to solicit business with the government of Libya and that he had participated in a business transaction to provide services, equipment, and technology in support of an industrial project in Libya. The affidavit of agent Verven further provides probable cause to believe that Duncan's passport constituted evidence of a criminal violation.

After Duncan's passport was seized in August 1992, he was not without a remedy. He could have immediately filed a motion seeking the return of the passport under Fed. R.Crim.P. 41(e) in the United States District Court for the Southern District of Texas. Although plaintiff was represented by counsel at that time, he did not avail himself of this relatively simple procedure for mitigating the effects of the seizure of his passport. Instead, he pursued a more circuitous route, but, in any event, the passport was returned to Duncan within six months of its seizure.

■ As a matter of law, plaintiff's claims against Goedeke, Cleary, Schramm, and Guinn are not actionable under *Bivens* because the conduct of which plaintiff complains does not rise to the level of a constitutional tort. Unlike the right to travel domestically, the right to travel internationally has not been determined to be a "fundamental freedom." *Haig v. Agee*, 453 U.S. 280, 306,

101 S.Ct. 2766, 2781, 69 L.Ed.2d 640 (1981); *Califano v. Aznavorian*, 439 U.S. 170, 176, 99 S.Ct. 471, 474, 58 L.Ed.2d 435 (1978); *Lee v. China Airlines, Ltd.*, 669 F.Supp. 979, 983 (C.D.Cal.1987). Instead, the right to travel internationally is deemed to be no more than a "liberty" protected by the due process clause of the Fifth Amendment. *Aznavorian*, 439 U.S. at 176, 99 S.Ct. at 474; *Califano v. Torres*, 435 U.S. 1, 4 n. 6, 98 S.Ct. 906, 908 n. 6, 55 L.Ed.2d 65 (1978). Thus, the seizure and temporary detention of Duncan's passport would be violative of substantive due process only if it were "wholly irrational." *Aznavorian*, 439 U.S. at 177, 99 S.Ct. at 475; *China Airlines*, 669 F.Supp. at 983.

Here, the government's interest in seizing and detaining the passport in conjunction with an investigation of alleged criminal conduct with ramifications on international business, national security, and foreign policy cannot be said to be wholly irrational, especially in view of the sworn affidavits of customs agents that Duncan was known to have travelled to Libya and other international destinations in connection with oil and gas transactions involving Libya. Furthermore, Duncan's interest in possessing his passport during the six months it was detained, which could have been substantially reduced if he had filed a motion for return of property under Fed.R.Crim.P. 41(e), was clearly outweighed by the government's interest in investigating potential criminal conduct with such far-reaching implications.

■ Procedural due process does not require notice and opportunity to be heard before evidence of a potential crime is seized pursuant to a search warrant. *Fuentes v. Shevin*, 407 U.S. 67, 93 n. 30, 92 S.Ct. 1983, 2000 n. 30, 32 L.Ed.2d 556 (1972). In fact, if advance notice were given, items sought under a search warrant likely would be removed, destroyed, or concealed prior to the search. *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679, 94 S.Ct. 2080, 2090, 40 L.Ed.2d 452 (1974); *Fuentes*, 407 U.S. at 93 n. 30, 92 S.Ct. at 2000. Passports routinely have been seized and detained as evidence of an alleged crime, both with and without a warrant, without running afoul of constitutional guarantees. *See, e.g., United*

States v. Jenkins, 943 F.2d 167, 171 (2d Cir.), cert. denied, —— U.S. ——, 112 S.Ct. 659, 116 L.Ed.2d 751 (1991); United States v. Fawole, 785 F.2d 1141, 1145 (4th Cir.1986); United States v. Throckmorton, 784 F.2d 1003, 1006 (9th Cir.1986); United States v. Harrington, 761 F.2d 1482, 1484 (11th Cir.1985); United States v. Warren, 578 F.2d 1058, 1063 (5th Cir.1978); United States v. Bolts, 558 F.2d 316, 320 (5th Cir.1977), cert. denied, 439 U.S. 898, 99 S.Ct. 262, 58 L.Ed.2d 246 (1978).

Here, Duncan's rights were adequately protected by the procedural safeguards built into the probable cause determination necessitated for the issuance of a search warrant. See Mackey v. Montrym, 443 U.S. 1, 10–12, 17–18, 99 S.Ct. 2612, 2617–2618, 2620–2621, 61 L.Ed.2d 321 (1979); Mathews v. Eldridge, 424 U.S. 319, 339, 349, 96 S.Ct. 893, 905, 909, 47 L.Ed.2d 18 (1976); Calero–Toledo, 416 U.S. at 677, 94 S.Ct. at 2089. Indeed, in Agee, 453 U.S. at 309, 101 S.Ct. at 2783, the Supreme Court expressly ruled that the due process clause did not prevent the outright revocation of a passport without prior notice and hearing. The cases cited by plaintiff, including DeNieva v. Reyes, No. 88–00017, 1989 WL 158912 (D.N.Mar.I. Oct. 19, 1989), aff'd in part and rev'd in part, 966 F.2d 480 (9th Cir.1992), are simply inapposite because they do not involve the seizure and detention of a passport pursuant to a validly issued search warrant.

At the hearing on defendants' motion, Duncan conceded that the seizure of his passport was not improper. Instead, he contended that the continued detention of it violated his constitutional rights. Yet, Duncan's position is no more tenable with regard to the detention of the passport. Duncan had a specific post-deprivation remedy, but he failed to avail himself of the very procedure under Fed.R.Crim.P. 41(e) designed for the return of property in this situation. Duncan should not now be permitted to collect money damages for an alleged deprivation of rights that could have been avoided merely by applying to the court for relief at the outset.

■ Alternatively, even assuming that a constitutional tort had been committed, federal law enforcement officials sued under Bivens have a qualified immunity defense.

Butz v. Economou, 438 U.S. 478, 508, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978). Under the doctrine of qualified immunity, federal officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Davis v. Scherer, 468 U.S. 183, 190, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984); Harlow, 457 U.S. at 818, 102 S.Ct. at 2738; Elliott v. Perez, 751 F.2d 1472, 1477 n. 13 (5th Cir.1985).

■ In order to overcome a defendant official's qualified immunity from Bivens suits, a plaintiff claiming violation of constitutional rights must first show that these rights were clearly established at the time of the conduct at issue. Davis, 468 U.S. at 197, 104 S.Ct. at 3021. For a federal official's conduct to give rise to Bivens liability, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

■ The undisputed evidence establishes that defendants Goedeke, Cleary, Schramm, and Guinn were acting in an objectively reasonable manner in executing an apparently valid search warrant and retaining a passport seized as evidence under the express terms of the warrant. Thus, assuming arguendo that one of plaintiff's constitutional rights was violated, the defendants would still fall within the doctrine of qualified immunity. Even defendants who violate constitutional rights enjoy a qualified immunity that protects them from liability unless it is further demonstrated that their conduct was unreasonable under the applicable standard. Davis, 468 U.S. at 189, 104 S.Ct. at 3016. Duncan fails to make such a showing.

Therefore, the court finds that there is no genuine issue of material fact as to plaintiff's claims against the individual federal agents and they are entitled to judgment as a matter of law. Accordingly, the motions for summary judgment filed by Goedeke, Cleary, Schramm, and Guinn are GRANTED.

### III. Conclusion.

The doctrine of sovereign immunity precludes plaintiff from stating a tort claim for money damages against defendant the United States except under the FTCA. Because he has not met the jurisdictional prerequisites for filing suit under the FTCA, Duncan's claims against the United States, except those seeking punitive damages, must be dismissed without prejudice. Duncan's claim for punitive damages must be dismissed with prejudice, as such damages are not recoverable against the United States under any circumstances.

Plaintiff cannot maintain an action against defendants the Customs Service or the Department of Treasury *eo nomine* because they have not waived their sovereign immunity. Therefore, Duncan's claims against them must be dismissed with prejudice.

Plaintiff cannot state a claim against agents Goedeke, Cleary, Schramm, or Guinn under 42 U.S.C. § 1983 because they are federal officers who were acting under color of federal, not state, law. Plaintiff cannot recover against them on a *Bivens* claim because he has not shown that they violated a clearly established constitutional right when they seized and detained his passport. Alternatively, he has not overcome their qualified immunity defense. Thus, summary judgment must be entered for defendants Goedeke, Cleary, Schramm, and Guinn.

### FINAL JUDGMENT

In accordance with the Memorandum and Order signed by the court on November 19, 1993, it is ORDERED that

The United States is dismissed without prejudice. Plaintiff's claims against the United States for punitive damages are dismissed with prejudice.

The United States Customs Service and the United States Department of Treasury are dismissed with prejudice.

Summary judgment is entered in favor of Jon Goedeke, Kevin Cleary ("incorrectly named as Kevin Cleasey in the complaint"), Martin Schramm, and Leon Guinn.

Larry R. Duncan shall take nothing by his suit.

This is a FINAL JUDGMENT.